

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   25mj6980
)
SHATTERED BLACK MOTOROLA WITH BLACK CASE )
Seized as FP&F No. 2026565500014101-0002 )
("Target Device") )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U.S.C. § 1324(a)(l)(A) (ii) and (v)(l)) | Conspiracy to Transport Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Jason Larson incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jason Larson, U.S. Border Patrol Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date:   12/18/2025       _____
*Judge's signature*

City and state:  San Diego, California      HON. JILL L. BURKHARDT, U.S. Magistrate Judge
*Printed name and title*

1

## ATTACHMENT A

2

PROPERTY TO BE SEARCHED

3    The following property is to be searched:

4    SHATTERED BLACK MOTOROLA WITH BLACK CASE
Seized as FP&F No. 2026565500014101-0002

5    (**"Target Device"**)

6    **The Target Device** is currently in the custody of the Department of Homeland
Security, Customs and Border Protection, United States Border Patrol, San Diego

7    Sector.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

## **ATTACHMENT B**

ITEM TO BE SEIZED

Authorization to search the cellular telephone described in Attachments A, includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **December 2, 2025, through December 16, 2025.**

a.   tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b.   tending to identify accounts, facilities, storage Device, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate alien smuggling and transportation of smuggled aliens;

c.   tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.   tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which is evidence of violations of Title 8, United States Code, Section 1324.

**AFFIDAVIT**

I, Jason Larson, being duly sworn, hereby state as follows:

**INTRODUCTION**

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

> SHATTERED BLACK MOTOROLA WITH BLACK CASE
> Seized as FP&F No. 2026565500014101-0002
> **("Target Device")**

Collectively, the **Target Device**, as further described in Attachment A and to seize evidence of a crime, specifically, violations of Title 8, United States Code 1324 (a)(l)(A)(ii) and (v)(I)) Conspiracy to Transport Illegal Aliens, as further described in Attachment B.

2. The requested warrant related to the investigation and prosecution of defendant, Raul Adrian PERAZA-Corrales, for conspiring to transport and move illegal alien(s), within the United States. The **Target Device** is currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

**TRAINING AND EXPERIENCE**

4. I have been employed by the USBP since 2011 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy

1

at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for 14 years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5.     My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6.     During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers

and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8.      The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States.  These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.  It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9.      Based upon my training, experience, and consultations with law enforcement officers experienced in human smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for

3

example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10.    This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a.  tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

    b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c.  tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d.  tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e.  tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11.     On December 16, 2025, Border Patrol Agent A. Jahchan, was performing his patrol duties at the Campo Border Patrol Station Interstate 8 Immigration Checkpoint.

12.     At approximately 9:45 AM, Agent Jahchan observed a grey vehicle that had stopped in the center of the checkpoint's traffic cone pattern. Agent Jahchan waved the vehicle forward but the vehicle started to drive in reverse. The driver of the grey vehicle then made an abrupt U-turn and accelerated away from the checkpoint at a high rate of speed, driving his vehicle eastbound in the westbound lanes.

13.     Agent Jahchan followed behind the grey vehicle in a Border Patrol vehicle as it continued to drive dangerously in the opposite direction of traffic. Agent Jahchan observed the vehicle reach speeds that exceeded 100 MPH. The driver of the grey vehicle yielded west of Kitchen Creek Road exit on Interstate 8 highway. This area is approximately 13.78 miles east of the Tecate, California Port of Entry and approximately 9.98 miles north of the United States/ Mexico International Boundary.

14.     The driver of the grey vehicle exited and Agent Jahchan detained him. Agent Jahchan checked the vehicle for other individuals but did not find anybody else in the vehicle. Agent Jahchan then conducted an immigration inspection on the driver, later identified as the defendant, Raul Adrian PERAZA-Corrales. PERAZA stated that he is a citizen of Mexico without any immigration documents that would allow him to enter or remain in the United States legally. At approximately 10:00 AM, Agent Jahchan placed PERAZA under arrest.

15.     At the time of arrest, the **Target Device** was on the front passenger floorboard of the vehicle and was claimed by PERAZA. The **Target Device** was subsequently seized.

16.     Defendant PERAZA was read his Miranda rights at 2:50 PM and agreed to speak with Agents. PERAZA admitted that he had agreed to pick up illegal individuals for $1,000 USD and to transport them to Los Angeles, California. PERAZA stated that he was given a vehicle to pick up illegal individuals and that the individuals he was supposed to pick up prior to his own arrest where apprehended earlier by Agents. PERAZA stated he drove dangerously against traffic because he knew he was here illegally and was afraid.

17.     Based upon my experience and training, consultation with other law enforcement officers experienced in human smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the Target Devices. In light of the above facts and my experience and training, there is probable cause to believe that both the criminal defendant and the material witness were using the Target Devices to communicate with others to further illegal entry into the United States.  Based on my training and experience, it is also not unusual for individuals, such as the defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim.  Accordingly, I request permission to search the **Target Device** for data beginning on **December 2, 2025, through December 16, 2025.**

## METHODOLOGY

18.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the devices are subscribed, and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their

6

subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19.    Following the issuance of these warrants, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

20.    Based on the foregoing, identifying, and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

11.    Law enforcement has made prior attempts to obtain the evidence in this warrant but were unable to do so because the phone was damaged.

1

**CONCLUSION**

2      21.    Based on the facts and information set forth above, there is probable cause to
believe that a search of the **Target Device** will yield evidence of an alien smuggling

3
violation of Title 8, United States Code, Sections 1324.

4      22.    Because the **Target Device** were seized at the time of defendant and

5 material witness's arrest and have been securely stored since that time, there is probable
cause to believe that such evidence continues to exist on the **Target Device**. As stated

6
above, I believe that the appropriate date range for this search is from **December 2, 2025,**

7 **through December 16, 2025.**

8      23.    Accordingly, I request that the Court issue warrants authorizing law
enforcement to search the item described in Attachment A and to seize the items listed in

9
Attachment        B        using        the        above-described        methodology.

10 I swear the foregoing is true and correct to the best of my knowledge and belief.

11

12                                        Jason Larson
                                          Border Patrol Agent

13 Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P.
4.1 by telephone on this **18th** day December 2025.

14

15

16 HON. JILL L BURKHARDT
United States Magistrate Judge

17

18

19

20

21                                                8